IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GLEN A. NAVATTO,

       Plaintiff,

vs.                                             Civ. No. 05-621 RHS

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.

## MEMORANDUM OPINION AND ORDER

    1.  This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand

for a Rehearing ("Motion"), filed October 31, 2005 **[Doc. 10]**.  Plaintiff seeks judicial review of

the final decision of the Commissioner of Social Security denying Plaintiff's claim for "a period of

disability and for Disability Insurance Benefits ["DIB"] under Sections 216(i) and 223 of the

Social Security Act ["SSA"]."  (Administrative Transcript ("Tr.") at 18.)

    2. Plaintiff applied for benefits on April 28, 2003, alleging a disability that commenced on

January 5, 2002 due to "diabetes, swollen right foot [and] leg . . ., back pain when bending [and]

blurred vision."  (Tr. at 49, 61.)  Plaintiff also claims that his ability to work is limited by lack of

endurance, dermatitis and high blood pressure.  (Tr. at 61.)  Plaintiff was born on June 7, 1952,

has an eleventh grade education and attended locksmith training.[1]  (Tr. at 49, 67.)  He has worked

in the past as a locksmith and taxi driver.  (Tr. at 62.)

---

    [1]Plaintiff testified at the administrative hearing that: "I failed 11th I believe, and then I got
my GED."  (Tr. at 177.)  Plaintiff also testified that he is a licensed pilot, but does not have a
current FAA medical certificate.  (Tr. at 177-78.)

3.    The standard of review in social security appeals is whether the Commissioner's final

decision, in this case the ALJ's decision, is supported by substantial evidence.[2] Thompson v.

Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted).  Additionally, the

Commissioner's failure to apply the correct legal standards, or show the Court that she has done

so, is also grounds for reversal.  See  Winfrey v. Chater, 92 F.3d 1017, 1019 (10th Cir.1996)

(citation omitted).

4.    The Court meticulously examines the record in order to determine if the evidence

supporting the Commissioner's decision is substantial, taking "into account whatever in the record

fairly detracts from its weight."  Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir.1994)

(quotation omitted).  However, in conducting its examination, the Court "may neither reweigh the

evidence nor substitute [its] discretion for that of the [Commissioner]."  Kelley v. Chater, 62 F.3d

335, 337 (10th Cir.1995).

5.    "To qualify for disability benefits, a claimant must establish a severe physical or mental

impairment expected to result in death or last for a continuous period of twelve months which

prevents the claimant from engaging in substantial gainful activity."  Thompson, 987 F.2d at 1486

(citing 42 U.S.C. §423 (d)(1)(A)); see also § 1382c(a)(3)(A).  Social Security Regulations require

the Commissioner to evaluate five factors in a specific sequence in analyzing disability

applications.  Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920.  The sequential evaluation process

---

[2]"Substantial evidence is such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion."  Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir.2003).
(quotations and citation omitted). However, "[a] decision is not based on substantial evidence if it
is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence
supporting it." Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir.1988).

ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  Id.

(citations omitted).

6.  At the first four levels of the evaluation, the claimant must show:  (1) that he is not

working; (2) that he has an impairment or combination of impairments severe enough to limit the

ability to do basic work activities; (3) that the impairment meets or equals one of the listing of

impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he is unable to perform work done

in the past.  Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).  At the fifth step of the

evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform

other substantial gainful activity considering his residual functional capacity ("RFC"), age,

education and prior work experience.  See 20 C.F.R. §§ 404.1520, 416.920.

7.  In this case, the ALJ found at step four that Plaintiff was "able to perform any of his

past relevant work as a locksmith as performed in the national economy."  (Tr. at 25 ¶7.)  In the

alternative, the ALJ found at step five that Plaintiff had the RFC "to perform substantially all of

the full range of light work" and that Plaintiff's "capacity for light work . . . has not been

compromised by any nonexertional limitations." (Tr. at 25 ¶¶11, 13).  The ALJ concluded that

Plaintiff was not disabled "using the . . . [Medical-Vocational Rule ("Grids")] as a framework for

decision-making."  (Tr. at 25 ¶13.)  Plaintiff raises the following allegations of error with respect

to the ALJ's decision: (I)  the ALJ's RFC finding is contrary to the evidence and the law; and (II)

the ALJ's finding of noncompliance is contrary to the evidence and the law.  (See Plaintiff's

Memorandum in Support of Motion ("Memo") at 3, 11 **[Doc. 11]**.)

*I  -  Whether the ALJ erred in determining Plaintiff's RFC*

8.  The ALJ found that Plaintiff retained the RFC to perform "[l]ight exertional work that does not require more than occasional stooping, crouching and climbing."[3]  (Tr. at 22; see also Tr. at 25 ¶6.)  Plaintiff alleges that the ALJ "committed three errors[4] in making this [RFC] finding."  (Plaintiff's Memo at 4.)

9.  Plaintiff contends that "[f]irst, the ALJ admitted that she relied exclusively on evidence from the nonexamining state agency physician" in determining Plaintiff's RFC.  (Id. (citing Tr. at 22.)  However, this contention is simply incorrect; nothing indicates that the ALJ made such an admission.  Indeed, the ALJ explicitly stated that, in addition to the opinion of the state agency physician, she relied on Plaintiff's "daily activities . . . and [the] treatment notes" as evidence supporting her RFC finding.  (Tr. at 22-23.)[5]  Whether Plaintiff's daily activities and the treatment

---

[3]The Court notes that this RFC finding, which includes several nonexertional limitations, appears to conflict with the ALJ's additional and/or "alternate" finding that Plaintiff's "capacity for light work is substantially intact and has not been compromised by *any* nonexertional limitations."  (Tr. at 25 ¶13 (emphasis added).)

[4]Despite alleging three errors, Plaintiff specifically enumerates only two errors, then proceeds to allege (without numbering) the following errors with respect to the ALJ's RFC finding:  (3) the ALJ "underestimated the impact of the findings regarding peripheral neuropathy" (Plaintiff's memo at 5); (4) the ALJ "minimized the impact of the [Plaintiff's] edema" (id. at 6); (5) the ALJ erred in evaluating the opinion of Dr. Sergeant (see id. at 7); (6) the ALJ's finding that Plaintiff's need to rest and elevate his legs could be accomplished during the normal breaks and lunch of a workday "is contrary to common sense, [sic] and to the law" (id. at 9); and (7) the ALJ "erred in relying on Mr. Navatto's daily activities" (id. at 10).

[5]The Commissioner does not dispute Mr. Navatto's assertion that the opinion of the nonexamining state agency physician conflicts with that of Mr. Navatto's treating physician.  Nor does the Commissioner disagree that the state agency physician's opinion "standing alone, unaccompanied by thorough written reports or persuasive testimony, . . . [is] not substantial evidence."  Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987) (citations omitted); see also Drapeau v. Massanari, 255 F.3d 1211, 1214 (10th Cir. 2001).

notes constitute substantial evidence to support the ALJ's RFC finding is an issue that the Court will address below.

10. Plaintiff alleges that "[t]he second problem with the light work finding is that there is no *positive* evidence that Mr. Navatto can perform the walking, standing and sitting required by light work." (Id. (emphasis in original) (citing Adkins v. Barnhart, 80 Fed.Appx. 44, 47 (10th Cir. 2003) (not selected for publication in the Federal Reporter).) Here, the ALJ apparently rejected the opinion of Plaintiff's treating physician, Michael Sergeant, M.D., in favor of the opinion of the nonexamining state agency physician regarding Plaintiff's abilities and limitations with respect to sitting, standing and walking. However, before determining whether other evidence supports the ALJ's RFC finding, the Court will first address Plaintiff's allegation that the ALJ erred in discounting Dr. Sergeant's opinion.

11. "According to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources.[6] In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for controlling weight." Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004). To make this determination, the ALJ "must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." Id. (citations omitted). If the opinion is well-supported, the ALJ "must then confirm that the opinion is consistent with other substantial evidence in the record. If the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id. (citations and internal brackets omitted).

---

[6]The parties do not disagree that Dr. Sergeant is a treating medical source.

12.  However, "[e]ven if a treating physician's opinion is not entitled to controlling

weight, treating source medical opinions are still entitled to deference and must be weighed using

all of the factors provided in § 404.1527.[7] "  Id. (citations, internal quotation marks and internal

brackets omitted).  The ALJ "must give good reasons . . . for the weight assigned to a treating

physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the

weight the adjudicator gave to the treating source's medical opinion and the reasons for that

weight.  If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons

for doing so."  Id. (citations, internal quotation marks and internal brackets omitted).

13.  In a letter dated January 26, 2005, Dr. Sergeant explained that Plaintiff:

> suffers somewhat difficult to control diabetes, hypertension,
> hypothyroidism, high cholesterol, chronic obesity, and chronic
> recurrent swelling of his legs – particularly on the right.  The
> difficulty with the swelling in the right leg is related to an injury
> suffered in 1993 . . . that was difficult to heal."

(Tr. at 171.)  Dr. Sergeant further opined that Plaintiff:

> is able to walk without much difficulty, but needs periods of rest.
> *He should not have prolonged sitting or standing, because he will
> swell significantly with this.  He probably should not be upright or
> sitting continuously for greater than approximately an hour,
> without the opportunity to elevate his legs above the waist, to help
> relieve swelling*.

(Id. (emphasis added).)

---

[7]"Those factors are: (1) the length of the treatment relationship and the frequency of
examination; (2) the nature and extent of the treatment relationship, including the treatment
provided and the kind of examination or testing performed; (3) the degree to which the
physician's opinion is supported by relevant evidence; (4) consistency between the opinion and
the record as a whole; (5) whether or not the physician is a specialist in the area upon which an
opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or
contradict the opinion."  Langley, 373 F.3d at 1119 (citing Watkins v. Barnhart, 350 F.3d 1297,
1301 (10th Cir. 2003)).

14.  The ALJ acknowledged Dr. Sergeant's letter regarding Plaintiff's limitations but found that this opinion was "not consistent with the treatment records."  (Tr. at 22.)  The ALJ explained that she did not afford Dr. Sergeant's opinion controlling weight:

> because the treatment notes do not support the presence of persistent painful swelling that required the claimant to elevate his legs several times a day.  The treatment notes make reference to the presence of swelling of the right ankle, but not to the left, and at most office visits the amount of swelling is described as "trace" to 1+, a description inconsistent with painful swelling that required elevation on a regular basis to remain comfort [sic].  Further, . . . [Dr. Sergeant] recommended the claimant walk for exercise and . . . . [t]he claimant reported walking more than seven hours a week in May 2004.  . . . [A] medical opinion may be rejected if it is brief, conclusory, and unsupported by the appropriate medical evidence.  Moreover . . . . a statement by a medical source that an individual is "disabled" or "unable to work" is not conclusive . . . [regarding] disability.

(Tr. at 22 (internal citations omitted.)  The Court finds that the ALJ made several errors in assessing and discounting Dr. Sergeant's opinion.

15.  First, the ALJ did not analyze Dr. Sergeant's opinion according to the process described in Langley.  Although the ALJ found that Dr. Sergeant's opinion was not entitled to controlling weight, she did not state what weight, if any, she afforded Dr. Sergeant's opinion.[8] Moreover, nothing indicates that the ALJ weighed Dr. Sergeant's opinion in light of the factors set forth in § 404.1527.  See Langley, 373 F.3d at 1119 (citing Watkins, 350 F.3d at 1301).

---

[8]Neither of the ALJ's RFC findings included a limitation allowing Plaintiff to elevate his legs.  Nor did the ALJ specifically find that Plaintiff was required to elevate his legs at any particular intervals.  Nevertheless, the ALJ also found that Plaintiff's "need to elevate his legs and rest can be accomplished during normal breaks and lunch during a [light] workday."  (Tr. at 23.) Thus, it is unclear whether, or to what extent, the ALJ gave Dr. Sergeant's opinion regarding Plaintiff's need to elevate his legs any weight whatsoever.

16.   Second, in discounting Dr. Sergeant's opinion, the ALJ misstates the medical record.
For example, the ALJ stated that the treatment notes referred to "swelling of the right ankle, *but
not the left . . . .*"  (Tr. at 22 (emphasis added).)  This statement is incorrect, because more than
one treatment note documented swelling in both of Plaintiff's ankles or legs.[9]  Further, despite the
ALJ's apparent presumption to the contrary, Dr. Sergeant did not opine that Plaintiff was
"disabled" or "unable to work."  (Tr. at 23.)  Indeed, nowhere in his letter did Dr. Sergeant
comment on Plaintiff's ability to work or offer an opinion that Plaintiff was disabled or non-
disabled.

17.   Finally, in finding the amount of Plaintiff's swelling to be "inconsistent with painful
swelling that required elevation on a regular basis to remain comfort [sic][,]" (tr. at 22) the ALJ
"overstepped [her] bounds into the province of medicine," Miller v. Chater, 99 F.3d 972, 977
(10th Cir. 1996).  While the records demonstrate that Dr. Sergeant was concerned about, and
sought to reduce, Plaintiff's edema,[10] it is not clear, as the ALJ speculated, that the reason Dr.
Sergeant sought to control Plaintiff's edema was to maintain "comfort."[11]  In any event, "[t]he

---

[9]On February 27, 2002, Dr. Sergeant noted "2+ pitting edema, right leg, 1+ left leg."  (Tr.
at 121.)  On February 4, 2003, Dr. Sergeant observed that Plaintiff's "ankles show 1+ pitting
edema" and planned "to try to get some fluids out of [Plaintiff's] legs."  (Tr. at 116.)

[10]For example, on February 4, 2003 Dr. Sergeant noted that Plaintiff was "having trouble
with ankle swelling and we need to get this off."  (Tr. at 116.)  On August 4, 2003, Dr. Sergeant
observed that Plaintiff "looks good, other than the edema."  (Tr. at 113.)

[11]Where it appears to the ALJ that the validity of a treating medical source's report is open
to question, or that the report contains "a conflict or ambiguity that must be resolved" or is not
"based on medically acceptable clinical and laboratory diagnostic techniques," the ALJ is obliged
to seek additional evidence or clarification before rejecting it.  Robinson v. Barnhart, 366 F.3d
1078, 1084 (10th Cir. 2004) (citing 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1); McGoffin v.
Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002)).

ALJ may not substitute [her] own opinion for that of claimant's doctor." Miller, 99 F.3d at 977

(citations omitted); see also McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002) (noting

that the ALJ may not reject a treating physician's opinion "*due to his or her own credibility*

*judgments, speculation or lay opinion*") (emphasis in original) (citation omitted).  Because the

ALJ erred in assessing the opinion of a treating medical source regarding Plaintiff's limitations,

this matter must be remanded for a re-assessment of Dr. Sergeant's opinion.

18.  Because a re-assessment of Dr. Sergeant's opinion regarding Plaintiff's abilities and

limitations may impact the ALJ's RFC finding, the Court need not address Plaintiff's remaining

allegations of error with respect to the RFC finding.  However, as previously noted, the

nonexamining state agency physician's opinion, standing alone, does not constitute substantial

evidence on which the ALJ could base a RFC finding.  See, e.g., Hamlin v. Barnhart, 365 F.3d

1208, 1227-28 (10th Cir. 2004) (explaining that the ALJ "must still support his RFC

determination with credible evidence from the record").  Moreover, the Court notes that, without

more, Plaintiff's daily activities and the treatment notes of record may be insufficient to support a

finding that Plaintiff has the RFC for light work.  Consequently, on remand the Commissioner

should consider presenting appropriate interrogatories to a treating physician and/or ordering a

consultative examination as needed to obtain sufficient evidence upon which to base a RFC

finding.

*II  -  Whether the ALJ erred in finding Plaintiff noncompliant*

19.  The ALJ found that "[w]ith respect to the claimant's blood glucose levels, the medical

evidence establishes the claimant is not always compliant with his diet or medication treatment

regimen (see, e.g. Exhibit 4F, at 13) [Tr. at 121]. "  (Tr. at 21.)  In the exhibit to which the ALJ

refers, Dr. Sergeant observes that Plaintiff's diabetes is poorly controlled.  (Tr. at 121.)

However, the Court finds nothing in Dr. Sergeant's treatment note that indicates Plaintiff is

noncompliant with his treatment regimen.

20.  Plaintiff argues, and Defendant apparently agrees, that the ALJ discounted Plaintiff's

credibility based on his lack of compliance.  However, nothing in the ALJ's decision indicates that

she did so.  Indeed, the ALJ's separate "credibility assessment" section contains no mention of

Plaintiff's compliance or lack thereof.  (Tr. at 22.)  Similarly, it is not clear that the ALJ based her

decision that Plaintiff was not disabled on a finding of noncompliance.  In any event, the ALJ did

not proceed through the four step test set forth in Thompson v. Sullivan, 987 F.2d 1482 (10th

Cir. 1993).[12]  On remand, the Commissioner should review the ALJ's noncompliance finding and

proceed in accordance with the steps set forth in Thompson, as necessary.

**WHEREFORE**,

**IT IS ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing **[Doc.**

**10]** is GRANTED and this cause is REMANDED for additional proceedings consistent with this

opinion, to include:

(1)      a re-assessment of the medical opinion of Plaintiff's treating physician, Michael

         Sergeant, M.D., regarding Plaintiff's abilities and limitations;

(2)      a review of the ALJ's noncompliance finding; and

---

[12]Before the ALJ may rely on the claimant's failure to pursue treatment or take medication as support for his determination of noncredibility, she should consider "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse."  Thompson, 987 F.2d at 1490 (citations omitted).

(3)     additional proceedings in light of any new or changed findings following

completion of steps (1) and (2) above, to include, as necessary

(a) submitting interrogatories to Plaintiff's treating physician and/or ordering a

consultative examination, and

(b) a re-evaluation of Plaintiff's credibility and/or RFC.


_Robert Hayes Scott_
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE